UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 18 CR 743 |
| v. ) | |
| ) | Hon. John Z. Lee |
| KEWAN WATTS ) | |

**UNITED STATES' OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT AND POSITION PAPER AS TO SENTENCING FACTORS**

Defendant Kewan Watts participated in a scheme to defraud the Illinois Department of Employment Security ("IDES") of millions of dollars in unemployment insurance benefits. Defendant was a relatively minor player in the scheme, providing co-defendant Brandon Pitts with addresses to which fraudulent cards could be sent and withdrawing funds using fraudulently obtained IDES debit cards. Nevertheless, like his co-defendant Korey Isbell, defendant was critical to the overall operation of the scheme. Accordingly, a sentence of imprisonment within the Guidelines range is appropriate. The defendant should also be ordered to pay restitution in the amount of $158,447, which is the amount of actual loss associated with this defendant, and he should serve a term of three years' of supervised release to ensure his successful and law-abiding return to the community.

I. **OFFENSE CONDUCT**

Defendant has pleaded guilty to one count of wire fraud, in violation of 18 U.S.C. § 1343, related to a larger scheme to defraud involving multiple defendants. While the objectives of the fraud scheme was simple – to steal money from IDES using

1

false identification information – the means by which the co-schemers achieved that objective was complex. Each defendant played a critical role in the scheme: Ashley Weathersby stole the personal identifying information from her employer, Southwest Gastroenterology, and sold that information to defendants Brandon Pitts, Corey Logsdon and Angelo Steele. Pitts, Logsdon and Steele used the information to file fraudulent claims for benefits, and directed IDES to send debit cards to various addresses in Chicago and elsewhere. Defendant Watts provided some of the addresses that Pitts would use in the fraudulent claims, and to which IDES would direct the IDES debit cards. Defendant retrieved the debit cards from the addresses he provided and used other cards at ATMs to withdraw cash, cash that he knew he was not his, because it was obtained fraudulently.

Watts himself was recruited into the scheme by his brother, Brandon Pitts. Specifically, on February 27, 2014, Pitts contacted defendant by text message and asked defendant if he had "any addresses easy lick to make some money," which defendant understood to mean Pitts wanted addresses as part of a criminal scheme and that defendant could make money from the scheme. Defendant asked Pitts what types of addresses he wanted and Pitts explained that the addresses needed to be able to receive "regular mail USPS." Pitts went on to explain "I'll give you names & you don't have to be there it comes regular mail so all they have to do is look out for the names when they check they mail." Defendant provided at least 31 addresses in the Chicago, Illinois, and Valparaiso, Indiana, areas to Pitts in exchange for cash payments. At Pitts' direction, defendant retrieved from those addresses envelopes

containing fraudulent obtained IDES debit cards and provided those IDES cards to Pitts.

As set forth in defendant's plea agreement, defendant used some of the fraudulently obtained debit cards to withdraw funds from ATMs, knowing that he was not entitled to those funds. Defendant used the funds for his own purpose and benefit. Defendant also knew that Pitts withdrew funds from ATMs using fraudulently obtained IDES debit cards. Defendant knew Pitts was not entitled to these funds and further knew that Pitts was using the money for his own purpose and benefit. Defendant acknowledged that Pitts used personal identification information, including names and social security numbers, of at least fifty different people, without their authorization, to obtain IDES debit cards.

In total, defendant and his co-schemers filed and caused to be filed false and fraudulent unemployment insurance claims in the names of, and using the personal identification information of, at least 892 individuals, resulting in intended loss to IDES of approximately $8.8 million in unemployment benefits and actual loss to IDES totaling approximately $1.5 million in unemployment benefits. As set forth in the spreadsheet attached to the Government's Version of the Offense, defendant himself is associated with 35 addresses, leading to approximately $1,010,044 of intended losses and $158,477 of actual losses to IDES.

As set forth in his plea agreement, defendant has also stipulated that on the date of his arrest, November 8, 2018, defendant knowingly possessed a Smith & Wesson AR-15 rifle, bearing serial number ST32187. Defendant knew that he had

previously convicted of a crime punishable by a term of imprisonment exceeding one year, and could not possess that rifle.

## II. THE PSR GUIDELINE RANGE

The Government agrees with Probation's Guideline range calculation, as set forth in the PSR at ¶¶ 37-110. Defendant's total offense level is 22 and his criminal history category is II, resulting in a Guidelines range of 46 to 57 months' imprisonment.

## III. A SENTENCE AT THE LOW END OF THE GUIDELINES RANGE IS APPROPRIATE

Criminal sentencing has four purposes – retribution, deterrence, incapacitation, and rehabilitation. *United States v. Milbourn*, 600 F.3d 808, 812 (7th Cir. 2010). Section 3553(a) requires the court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing. In order to determine the particular sentence to impose, the Court must consider the familiar statutory factors listed in § 3553(a)(1)-(7). One of those factors is the advisory range set by the Sentencing Guidelines, and another is the Commission's policy statements. *See* § 3553(a)(4), (a)(5). Although the Sentencing Guidelines are advisory only, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 522 U.S. 38, 128 S. Ct. 586, 596 (2007). For two reasons, this Court should give serious consideration to the advisory Guidelines range.

*First*, the Sentencing Guidelines are the sole factor in § 3553(a) that provides any objective sentencing range that can practicably promote the overall goal of minimizing unwarranted sentencing disparities, which is itself a statutorily-

4

mandated factor, § 3553(a)(6). *See United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005) ("The Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country."); *see also Booker v. United States*, 543 U.S. 220, 250 (2005) ("Congress' basic statutory goal – a system that diminishes sentencing disparity"); *id.* at 253 ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity"); *id.* at 267 (rejecting other remedial alternatives because they were inconsistent with the "basic objective of promoting uniformity in sentencing"). The Supreme Court created the advisory system to "continue to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individual sentences where necessary." *Booker*, 543 U.S. at 264-65. The only way to prevent widespread unwarranted disparities is to give serious weight to the Guidelines.

*Second*, the Guidelines deserve meaningful consideration because they are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall*, 128 S. Ct. at 594. It is true that there is no "presumption" that a Guidelines sentence is the "correct" sentence, *Rita v. United States*, 551 U.S. 338, 351 (2007), and that there is "broad" sentencing discretion post-*Booker*. *United States v. Demaree*, 459 F.3d 791, 794-95 (7th Cir. 2006). However, the Commission is "a respected public body with access to the best knowledge and practices of penology; its judgments should not lightly be disregarded." *United States v. Wachowiak*, 496 F.3d 744, 753 (7th Cir. 2007) (internal

5

quotation and citation omitted). Furthermore, the Commission is charged by statute to periodically review and revise the Guidelines as the Commission collects comments and data from numerous sources in the criminal justice system. *See* 28 U.S.C. § 994(o). These ongoing efforts to refine the Guidelines are another reason seriously to consider the advisory range.

Here, a careful consideration of the § 3553(a) factors weighs in favor of a sentence at the low end of the advisory Guidelines range.

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant Warrant a Sentence at the Low End of the Guidelines Range

#### 1. Nature and Circumstances of the Offense Conduct

The nature and circumstances of the offense are very serious for at least two reasons. *First*, the scheme – and defendant's role in it – involved fraudulently obtaining IDES funds, money that was intended to support individuals in Illinois who were unemployed and needed IDES assistance to replace lost income. Defendant's conduct in providing addresses to which Pitts could have IDES debit cards sent caused actual losses of at least $158,477, and could have caused losses in excess of $1 million. Those losses are real and they are significant.

Fraud on IDES diverts money from legitimate claimants – people who have lost their jobs – to people, like defendant, who have no legitimate claim to the funds. Ultimately, that fraud adds significant costs for IDES and Illinois taxpayers, and impacts the operation of the entire system of unemployment benefits. *See United States v. Wilson*, 960 F.2d 48, 50–51 (7th Cir. 1992) ("Prosecuting those who defraud state unemployment compensation programs is an important means for protecting

6

the government's investment by ensuring that those programs are run with a minimum of waste and fraud.")[1]

*Second*, and equally as importantly, defendant knowingly participated in a scheme to defraud IDES using the names and information of unsuspecting identity theft victims. Defendant knew this because he provided addresses to his co-schemer Pitts, and then would retrieve fraudulently obtained IDES cards in the names of people he did not know from those addresses. He also used IDES debit cards in the names of multiple people he did not know to withdraw funds from ATM machines. Defendant knew, or reasonably should have known, that those names were the names of real people whose identities were stolen in order to allow him and his co-schemers to fraudulently obtain significant amounts of cash.

Defendant's conduct was very serious and demands a serious sentence. Defendant's offense was a crime not only of greed, but of deception and the callous disregard of consequences that could result to individuals and an entire system established to assist people in the community. Accordingly, the seriousness of the offense demands a Guidelines sentence.

## 2. Nature and Circumstances of Stipulated Conduct

Defendant's possession of a firearm – an AR-15 rifle that had been stolen – in his home in the middle of Chicago, is also a serious offense. Gun violence is – and was in 2018 – at an alarmingly high level in Chicago. The possession of such a lethal

---

[1] The government intends to introduce prior to sentencing a victim impact statement from IDES setting forth the harm of fraudulent schemes like the one at issue in this case to IDES and Illinois taxpayers generally.

7

weapon by someone who knew he could not legally possess any firearm at all creates serious risk for defendant, his family and his community. Defendant's possession of the firearm also demands a serious sentence, and a Guidelines sentence will reflect the serious nature of this offense.

### 3. Defendant's History and Characteristics

The Court is also required to consider, under 18 U.S.C. § 3553(a), the defendant's history and characteristics. A review of defendant's history and characteristics weighs in favor or a low-end Guidelines sentence. Defendant has an extensive criminal history. Between 2002, when he was 18 years old, and 2017, when he was 33, defendant has been convicted of disorderly conduct (PSR ¶ 66), illegal possession of a firearm (PSR ¶ 67), aggravated discharge of a firearm (PSR ¶ 74), 14 driving offenses (PSR ¶¶ 65, 68-73, 75-81) and one narcotics (cannabis) offense (PSR ¶ 82). The firearms offenses in particular present a serious safety concern, particularly in light of the fact that defendant was found with a dangerous rifle when he was arrested in this case. Although the government agrees that defendant's cannabis offense will likely be expunged, the driving offenses, while minor, show a continued disregard for the law and, with the firearms offenses, demonstrate a serious criminal history.

In mitigation, while defendant was a raised by a loving mother and has a supportive family (PSR ¶¶ 113, 120-21), he has had some significant challenges in his life, beginning with his father's death at a young age (PSR ¶ 112), continuing through the tragic and heartbreaking loss of his daughter in 2015 (PSR ¶ 117), and the death of his ex-wife in 2020 (PSR ¶ 115). All of those circumstances can be considered as

8

mitigating in fashioning an appropriate sentence. Similarly, defendant's expressions of remorse and his acceptance of responsibility demonstrate defendant's potential in turning from his criminal past to a more productive and meaningful future. All of this mitigation counsels in favor of a low-end Guidelines sentence.

### B. The Need for a Guideline Sentence

In addition to evaluating the nature of offense and the history and characteristics of the defendant, section 3553(a)(2)(A)-(C) requires that a sentence "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant." A sentence at the low end of the Guidelines range accounts for the seriousness of defendant's offenses, will promote respect for the law by defendant and other would-be offenders and will provide just punishment for the offenses.

The advisory Guidelines range in this case is lengthy. However, defendant participated in a massive fraud on IDES; had this fraud not been discovered by law enforcement, it likely would have continued indefinitely, harming more and more individuals and the IDES unemployment benefit system. Without a significant sentence, defendant himself and others like defendant will fail to appreciate the harm this type of crime causes to institutions and individuals, and will continue to see the allure of "easy" fraudulently obtained money. A Guideline sentence will promote respect for the law and provide just punishment for the offense.

9

IV.     **PROPOSED CONDITIONS OF SUPERVISED RELEASE**

Consistent with the Seventh Circuit's guidance in *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015), the United States recommends a term of supervised release of three years with certain conditions imposed to ease the transition back into the community. The government sets forth below the justifications for the proposed conditions of defendant's supervised release. *See, e.g., United States v. Siegel*, 753 F.3d 705, 717 (7th Cir. 2014) (vacating supervised release conditions because the conditions were "inappropriate, inadequately defined, or imposed without the sentencing judge's having justified them by reference to the sentencing factors in 18 U.S.C. § 3553(a)").

   A.     **Proposed Mandatory Conditions of Supervised Release**

The following conditions are required by law:

1.      The defendant shall not commit another federal, state or local offense. *See* 18 U.S.C. § 3583(d); U.S.S.G. § 5D1.3(a)(1).

2.      The defendant shall not unlawfully possess a controlled substance and refrain from unlawful use of a controlled substance and submit to one drug test within 15 days of release on supervised release and at least two periodic tests up to 104 periodic tests. *See* 18 U.S.C. § 3583(d); U.S.S.G. § 5D1.3(a)(2).

3.      The defendant shall submit to the collection of a DNA sample at the direction of the U.S. Probation Office if the collection of such a sample is authorized pursuant to Title 42, United States Code, Section 14135a(a). *See* 8 U.S.C. § 3583(d); U.S.S.G. § 5D1.3(a)(8).

4. The defendant shall pay a $100 special assessment. 18 U.S.C. § 3013; U.S.S.G. § 5D1.3(a)(6).

**B.  Proposed Discretionary Conditions of Supervised Release**

The following conditions support defendant's rehabilitation and reintegration into the community, and ensure that he is engaged in lawful pursuits rather than criminal activity:

5. The defendant shall provide financial support to any dependents if financially able to do so.

6. The defendant shall seek, and work conscientiously at, a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons. *See* U.S.S.G. § 5D1.3(c)(7).

7. The defendant shall not knowingly meet or communicate with any person he knows to be engaged in, or planning to be engaged in, criminal activity.

8. The defendant shall refrain from the excessive use of alcohol.

9. The defendant shall refrain from possessing a firearm, destructive device, or other dangerous weapon. *See* U.S.S.G. § 5D1.3(c)(10); 18 U.S.C. § 922(g).

The following conditions are intended to facilitate the probation officer's supervision of the defendant, which is important to promote the defendant's respect for the law and to deter the defendant from committing future crimes:

10. The defendant shall not knowingly leave the judicial district in which he is being supervised without the permission of the court or the probation officer. *See* U.S.S.G. § 5D1.3(c)(3).

11. The defendant shall report to the probation officer as directed by the probation officer. *See* U.S.S.G. § 5D1.3(c)(2).

12. The defendant shall permit the probation officer to visit his home or elsewhere at any reasonable time, and permit confiscation of any contraband observed in plain view of the probation officer. *See* U.S.S.G. § 5D1.3(c)(6).

13. The defendant shall notify the probation officer within 72 hours of any change in his residence, employer, or workplace. *See* U.S.S.G. § 5D1.3(c)(5).

14. The defendant shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer. *See* U.S.S.G. § 5D1.3(c)(9).

**C.    Proposed Special Conditions of Supervised Release**

The following conditions are intended to help the defendant transition into the community and to ensure compliance with the conditions of supervised release:

15. If unemployed after the first 60 days of supervision, or if unemployed for 60 days after termination or lay-off from employment, defendant shall perform at least 20 hours of community service per week at the direction of the U.S. Probation Office until gainfully employed. U.S.S.G. § 5D1.3(e)(3).

16. Defendant shall not maintain employment where he has access to other individual's personal information, including Social Security numbers and credit card numbers unless approved by a Probation officer.

17. Defendant shall pay any financial penalty that is imposed by the Court that remains unpaid at the commencement of the term of supervised release. A monthly payment schedule shall be an amount that is at least 10% of defendant's net

monthly income, defined as income net of reasonable expenses for basic necessities such as food, shelter, utilities, insurance and employment-related expenses.

18. Defendant shall not incur new credit card charges or open additional lines of credit without the approval of a Probation officer unless he is in compliance with the financial obligations imposed by the Court's judgment.

19. Defendant shall provide a Probation officer with access to any requested financial information necessary to monitor compliance with conditions of supervised release.

20. Defendant shall notify Probation of any material change in his economic circumstances that might affect his ability to pay restitution, fines or special assessments.

21. Defendant shall file accurate income tax returns and pay all taxes, interest and penalties as required by law.

22. Defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court. U.S.S.G. § 5D1.3(c)(11).

V. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court sentence the defendant at the low-end of the Guidelines range, order defendant to pay restitution of $158,477, and order a three-year period of supervised release consistent with the goals of criminal punishment.

Respectfully Submitted,

JOHN R. LAUSCH, JR.
UNITED STATES ATTORNEY

By: /s/ *Matthew L. Kutcher*
MATTHEW L. KUTCHER
Assistant United States Attorney
United States Attorney's Office
219 South Dearborn Street
Chicago, Illinois 60604
(312) 469-6132

Dated: January 5, 2021